El Pueblo, Demandante y Apelante, *v.* Torregrosa et al., Acusados y Apelados.

Apelación procedente de la Corte de Distrito de Aguadilla en causa por conspiración.

No. 900.—Resuelto en mayo 31, 1916.

Falsificación de Pruebas—Testamento Falso—Presentación de un Testamento Falso a un Albacea—Intención.—La presentación a un albacea de un supuesto testamento falso y la obtención de dinero como consecuencia de ello, no equivale a la intención de presentarlo o permitir que se presente, con

algún fin fraudulento o avieso, como genuino y verdadero, en algún juicio, procedimiento, acusación o investigación que determina el artículo 128 del Código Penal.

CONSPIRACIÓN—FALSIFICACIÓN—FRAUDE—HEREDEROS LEGÍTIMOS—INTENCIÓN DE DEFRAUDAR.—Una acusación, por el hecho de preparar dos o más personas un testamento falso con la intención de defraudar a los herederos legítimos de un causante, puede ser presentada, ya por conspiración para cometer el delito que prescribe el artículo 413 del Código Penal, o directamente por el delito de falsificación determinado en dicho artículo; sin que la alegación del Fiscal en el presente caso de que los actos de los supuestos conspiradores tendían a defraudar a los herederos equivalga a la de que los actos fueron cometidos con intención de defraudarlos.

ID. — FALSIFICACIÓN DE TESTAMENTO — ACTOS DE CARÁCTER PÚBLICO — SALUD Y. MORAL PÚBLICAS—JUSTICIA PÚBLICA.—La falsificación de un testamento no es un acto de carácter público que perjudique la salud, la moral, o pervierta u obstruya la justicia o la debida administración de las leyes dentro del significado del artículo 62 del Código Penal.

ID.—TESTAMENTO FALSO—SUSPENSIÓN EN EL EJERCICIO DE LA ABOGACÍA (DISBARMENT).—Cuando se imputa a un notario, que también es un abogado, la preparación de un testamento falso, puede iniciarse ante la Corte Suprema, a. discreción del Attorney General, el oportuno procedimiento para suspenderlo en el ejercicio de su profesión sin esperar, el resultado del juicio.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Salvador Mestre, Fiscal.*

Abogados de los apelados: *Sres. Llorens & Canales.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La Corte de Distrito de Aguadilla declaró con lugar una excepción perentoria a la siguiente acusación:

"El Fiscal formula acusación contra Angel Torregrosa, Simón Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez y Francisca Ramos por un delito de conspiración (*misdemeanor*), cometido como sigue:

"PRIMER CARGO.—Los citados Angel Torregrosa, Simón Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez y Francisca Ramos, en época anterior a la presentación de esta acusación o sea allá por el día 9 de marzo de 1915 en Aguadilla que forma parte del distrito judicial del mismo nombre, ilegal, voluntaria y maliciosamente, conspiraron, convinieron y pusieron de acuerdo para cometer el delito de falsificación de pruebas e ilegal, voluntaria y maliciosamente obrando juntos y de común acuerdo allí y entonces prepararon e hicieron un testamento falso, que es un instrumento escrito, haciendo aparecer en el mismo como testador al hoy interfecto Artemio Vergne Muñoz, como su única y universal heredera a Doña Josefa Muñoz, y

como albacea al esposo de ésta Don Agustín Guevara, cuyo testamento así falso copiado literalmente dice así:

· " '*Número trece.—Testamento abierto.*—En la ciudad de Aguadilla a las tres de la tarde del día nueve de marzo de mil novecientos quince. Ante mí. Licenciado Angel M. Torregrosa, Abogado y Notario de Puerto Rico, con residencia, vecindad y estudio en Aguadilla. Comparece. En esta su casa habitación, donde me constituí previo requerimiento, Don Artemio Vergne y Muñoz, de cincuenta años de edad, soltero, comerciante, de esta vecindad e hijo legítimo de Don Guillermo y Doña Soledad. Y hallándose en el pleno goce de sus facultades mentales, habla expedita y capacidad legal necesaria para poder testar a juicio de los testigos y de mí el notario y, además, de su médico de cabecera el Doctor Don Simón Moret y Muñoz, el que le asiste, y me asegura, también, que está el dicho Sr. Vergne en el pleno uso de sus sentidos a pesar de la dolencia que lo tiene en cama, ordena su testamento como sigue: El funeral y entierro lo deja a disposición de su albacea para cuyo cargo nombra a Don Agustín Guevara y Santini. Declara que no tiene ascendientes ni descendientes legítimos ni naturales. Ordena que la declaración de sus bienes la haga su albacea de acuerdo con los inventarios, libros o papeles que se hallaren a su fallecimiento. Declara que tiene interés en la casa que gira en esta ciudad bajo la razón de "López y Vergne" de la que es socio, que tiene algunas deudas en contra y otras a favor, las cuales quiere sean pagadas o cobradas religiosamente, no pudiendo por momento determinar el montante de unas y de otras. · En el remanente de sus bienes, después de satisfechos los gastos de ·su enfermedad y muerte y de satisfechas sus deudas y en atención de los buenos procederes que para con él ha tenido su parienta Doña Josefa Muñoz Rivera de Guevara de ·esta vecindad, elige y nombra a ésta por su única y universal heredera. Revoca y anula toda otra disposición anterior que de palabra o por escrito haya hecho con arreglo a sus bienes. Así lo otorga y no firma por impedírselo la debilidad de su pulso, pero autoriza al primero de los testigos para que lo haga a su nombre. Son testigos que conozco presentes vecinos, mayores de edad, Don Enrique Falcón, Don Rosendo Pérez y Don José V. Cintrón. Y yo, el notario, del conocimiento del otorgante y testigos, de cuanto aquí se refiere y de haberse cumplido las disposiciones del Código Civil, yo, el notario, doy fe, dándola también de aprobar el testador y testigos el enmendado "V" que vale. Por imposibilidad física del testador, Don Artemio Vergne y Muñoz, y como testigo, Enrique Falcón, Rosendo

Pérez, José V. Cintrón, Dr. Moret Muñoz.   Firmado y signado—Angel
M. Torregrosa.'

''Que los acusados Angel M. Torregrosa y Simón Moret actuaron
en el referido testamento, el primero en su condición de notario pú-
blico autorizante del mismo y el segundo o sea el acusado Simón Moret
en su calidad de médico certificando y firmando dicho testamento
sobre las condiciones mentales del referido Artemio Vergne Muñoz,
y a todos y a cada uno de los acusados nombrados les constaba porque
se encontraban presentes al hacerse el mismo, que el referido Artemio
Vergne Muñoz en aquel momento se hallaba sin conocimiento y per-
didas sus facultades mentales hasta tal punto que no podía hablar,
oir ni entender, hecho éste que les constaba más todavía a los acu-
sados Simón Moret Muñoz, José V. Cintrón y Francisca Ramos ya
que todos éstos asistieron al referido Vergne durante toda su enfer-
medad y hasta el momento de su muerte, el primero como médico, el
segundo como practicante y la tercera como *nurse* y sabían y les cons-
taba que desde poco más o menos una semana antes de morir ya el
citado Vergne había perdido el conocimiento y, por tanto, estaba impo-
sibilitado físicamente para realizar acto alguno que dependiera de
su voluntad, aparte de que el acusado Simón Moret en su condición
de médico sabía y estaba enterado de todos los pormenores de la enfer-
medad que privó de la vida al citado Vergne y de las condiciones
mentales en que se encontraba a la fecha en que alega el Fiscal que
se hizo el expresado testamento falso; sabiendo todos y cada uno de
los acusados referidos Angel M. Torregrosa, Simón Moret, Enrique
C. Falcón, José V. Cintrón, Rosendo Pérez y Francisca Ramos que el
referido Artemio Vergne Muñoz allí y entonces no dispuso libremente
de sus bienes ni en esa ni en ninguna otra forma toda vez que no
estaba en el pleno goce de sus facultades mentales y siendo esto así
no podía ser el testamento así redactado su libre, espontánea y última
voluntad, no pudiendo, por tanto; autorizar a persona alguna para que
firmara a su ruego el referido testamento.

''Alega asimismo el Fiscal que los acusados Angel M. Torregrosa,
Simón Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez y
Francisca Ramos en el día y hora y sitio mencionados, ilegal, volun-
taria, corrupta y maliciosamente se confabularon, convinieron, cons-
piraron y pusieron de acuerdo para preparar y hacer el testamento
falso anteriormente transcrito con el propósito de presentarlo—como
lo presentaron—como genuino y verdadero al albacea nombrado en
el testamento Don Agustín Guevara, expidiendo a éste una copia del
mismo el acusado Angel M. Torregrosa en su condición de notario

público a los efectos del procedimiento para hacerse cargo como se
hizo el citado Agustín Guevara de los bienes del finado Artemio Vergne
y en la creencia de que dicho testamento era verdadero adelantó al
acusado Simón Moret la suma de $500 a cuenta de sus servicios de
asistencia como médico del referido Vergne y a reserva de la liquida-
ción de la herencia del citado Artemio Vergne; entregando a la otra
acusada Francisca Ramos la suma de $5 a cuenta de sus servicios
prestados como *nurse* y también a reserva de la liquidación de la refe-
rida herencia; y el otro acusado Angel M. Torregrosa también pasó
su recibo al administrador judicial de los bienes del citado Artemio
Vergne por la suma de *doscientos* dollars importe por sus honorarios
en la redacción del documento escrito de referencia. Que los hechos
así realizados por los acusados eran tendentes a defraudar en sus
bienes a los legítimos herederos del hoy finado Artemio Vergne y que
dicho testamento falso fué redactado y confeccionado con el fin frau-
dulento y avieso de presentarlo también como genuino y verdadero
en el procedimiento que había de iniciarse por dichos legítimos here-
deros.

"SEGUNDO CARGO.—Alega asimismo el Fiscal que los referidos
acusados, Angel M. Torregrosa, Simón Moret, Enrique C. Falcón,
José V. Cintrón, Rosendo Pérez y Francisca Ramos, allá por el día
9 de marzo de 1915, en Aguadilla, que forma parte del distrito judi-
cial del mismo nombre, se confabularon, convinieron, conspiraron y
pusieron de acuerdo, e ilegal, voluntaria y maliciosamente, obrando
juntos y de común acuerdo, prepararon e hicieron el testamento falso,
de que se ha hecho mención, que es un instrumento escrito, haciendo
aparecer en el mismo como testador al hoy interfecto Artemio Vergne
Muñoz; como su única y universal heredera a Doña Josefina Muñoz
y como albacea a su esposo, Don Agustín Guevara, con el propósito
de presentar o permitir que se presentase el referido testamento falso
como genuino y verdadero, y dicho acto así realizado era tendente a
pervertir y obstruir la justicia y la debida administración de las leyes.

"Este hecho es contrario a la ley para tal caso hecha y prevista,
y a la paz y dignidad de El Pueblo de Puerto Rico. (Firmado)
José E. Figueras, Fiscal del Distrito. (Jurada ante el secretario del
distrito.)"

La corte emitió una opinión detallada, parte de la cual
envuelve una crítica por no haber incluído el Gobierno ciertos
hechos que a nuestro entender son materia de prueba más
bien que alegaciones necesarias. Nos inclinamos a creer que

la acusación podría más bien ser criticada por contener de más que de menos.

La tendencia general de la acusación en este caso es imputar una conspiración para cometer el delito especificado en el artículo 128 del Código Penal, que dice así:

"Artículo 128.—Toda persona que prepare algún libro, papel, documento, registro, instrumento escrito, u otro objeto falsificado o antedatado con el propósito de presentarlo o permitir que se presente con algún fin fraudulento o avieso, como genuino y verdadero, en algún juicio, procedimiento, o acusación autorizada por la ley, será reo de *felony* (delito grave)."

En consonancia con esa teoría la acusación imputa, entre otras cosas, la presentación al albacea del supuesto testamento falsificado y la obtención de dinero como consecuencia de ello. Según se expresa en los últimos párrafos del primer cargo, la idea parece haber sido que la presentación al albacea del testamento equivalía a la intención de presentarlo o permitir que fuera presentado "con algún fin fraudulento o avieso, como genuino y verdadero, en algún juicio, procedimiento o acusación" tal como se describe en el estatuto. Tenemos seria duda de si el mostrar el testamento, o presentar el mismo al albacea sería propiamente el procedimiento que el artículo 128 prevee, y como el delito se determina como nacido de la presentación a dicho albacea, creemos que los acusados tienen derecho al beneficio de la duda. Quizás podría decirse que la mera preparación de un testamento falso y fraudulento para ser unido al protocolo de un notario constituía ya la intención de permitir que fuera presentado en algún juicio, procedimiento o investigación. Necesariamente hay siempre alguna investigación a la muerte de un hombre sobre si murió o no intestado, y esa investigación puede tener lugar en la oficina notarial donde las copias son solicitadas. La oficina de un notario es de carácter público y él debe mostrar el testamento a las personas con derecho a ello aparentemente. Bajo una teoría análoga podría sostenerse un proceso por conspiración para cometer el acto especificado en el artículo

128, pero la acusación en este caso no fué formulada bajo tal teoría.

Creemos asimismo que existe una teoría más sencilla bajo la cual una acusación en este caso podría ser redactada.

El texto inglés del artículo 413 del Código Penal determina:

"*Section 413.—Every person who, with intent to defraud another, falsely makes, alters, forges, or counterfeits any charter, letters-patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, bond, covenant, bank-bill or note, post-note, check, draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for money or property, passage ticket, power of attorney, or any certificate of any share, right, or interest in the stock of any corporation or association, or any controller's warrant for the payment of money at the treasury, treasurer's order or warrant, or request for the payment of money, or the delivery of goods or chattels of any kind, or for the delivery of any instrument or writing, acquittance, release, or discharge for any debt, account, suit, action, demand, or other thing, real or personal, or any transfer or assurance of money, certificates of shares of stock, goods, chattels, or other property whatever or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands or tenements, or other estate, real or personal, or any acceptance or indorsement of any bill of exchange, promissory note, draft, order or assignment of any bonds, writing obligatory, or promissory note for money or other property, or counterfeits or forges the seal or handwriting of another or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forges or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage or defraud, any person; or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is guilty of forgery.*"

El texto español de este artículo está truncado, pero una traducción correcta del mismo es como sigue:

"Artículo 413.—Será culpable de falsificación toda persona que, con intención de defraudar a otra, falsamente hiciere, alterare, falsificare, o imitare cualquier título, patente de privilegio, escritura, contrato de arrendamiento, instrumento, obligación escrita, testamento, codicilo, comprobante de pensión, bono, pacto, billete de banco, vale postal, cheque, libranza, letra de cambio, contrato, pagaré, cuenta vencida para el pago de dinero o bienes, recibo por dinero o bienes, billete de pasaje, poder, o cualquier certificado de acción, derecho, o interés en el capital de cualquiera corporación o asociación, o libramiento de cualquier contador para el pago de dinero en la tesorería, orden o libramiento de un tesorero, o requerimiento para el pago de dinero, entrega de mercancías o bienes muebles de cualquier clase, o para la entrega de cualquiera escritura, finiquito, descargo o relevación por alguna deuda, cuenta, pleito, acción, requerimiento, o cualquier otra cosa, inmueble o mueble, o cualquier traspaso o seguro de dinero, certificados de acciones, géneros, bienes muebles o de cualquiera otra clase, o cualquier poder o autorización para recibir dinero, o para recibir o transferir certificados de acciones o pensiones, o para alquilar, arrendar, disponer de, enajenar o traspasar cualesquiera mercancías, bienes muebles, terrenos o tenencias o cualquiera otra propiedad inmueble o mueble, o cualquiera aceptación o endoso de cualquiera letra de cambio, pagaré, libranza, poder o cesión de cualesquiera bonos, obligación escrita o pagaré por dinero u otra propiedad; o que imitare o falsificare el sello o letra de otra persona, o circulare, publicare, pasare o tratare de pasar, como genuina y verdadera, cualquiera de las cosas arriba especificadas como falsas, alteradas, falsificadas o imitadas, tal como antes se determinan y describen, sabiendo que las mismas son falsas, alteradas, falsificadas o imitadas, con intención de perjudicar, causar daño, o defraudar a alguna persona; o que, con intención de defraudar, alterare, viciare o falsificare la inscripción de cualquier testamento, codicilo, traspaso, u otro instrumento cuya inscripción constituya prueba legal, o el registro de cualquier sentencia de un tribunal o el diligenciamiento de un mandamiento de una corte por cualquier funcionario."

Por tanto, creemos que bajo los hechos especificados en la acusación una nueva acusación puede ser presentada en la que se impute una conspiración para preparar un testamento falso con la intención de defraudar a los herederos legítimos, acaso dando sus nombres. El primer cargo tal como está redactado, determina casi todos los hechos nece-

sarios para constituir una conspiración de esta naturaleza, pero la alegación al final del primer cargo de que los actos de los supuestos conspiradores tendían a defraudar a los herederos no equivale a una alegación de que los actos fueron cometidos "con intención de defraudar" a tales herederos. según determina el artículo 413.

Gran parte de las alegaciones superfluas que contiene dicha acusación pudo ser omitida.

No vemos que el segundo cargo determine un acto tendente a pervertir la justicia pública sino en el sentido general en que cualquier acto ilegal pervierte la justicia. El artículo 62 del Código Penal, entre otras cosas provee (Véase el texto inglés):

"Si dos o más personas conspiraren  \*  \*  \*  para cometer algún acto perjudicial a la salud pública, o la moral pública, o encaminado a pervertir u obstruir la justicia o la debida administración de las leyes, tales personas serán penadas con cárcel por un término máximo de un año, o multa máxima de mil dollars, o ambas penas."

Los actos que en el mismo se determinan son de carácter público y no incluyen la falsificación de un testamento.

Queremos llamar la atención del Fiscal hacia el hecho de que si los actos imputados en este caso pueden ser probados, ellos constituyen hechos por los cuales el notario, que es un abogado, podría ser suspendido, y un procedimiento de esa naturaleza podría, en la discreción del Attorney General, ser iniciado ante esta corte sin esperar el resultado del juicio.

La resolución de la corte inferior debe ser confirmada pero adicionándola en el sentido de que se desestima la acusación sin perjuicio de que pueda presentarse una nueva, ya por conspiración para cometer el delito que prescribe el artículo 413 del Código Penal o directamente por el delito de falsificación determinado en dicho artículo.

> *Confirmada la resolución apelada pero adicionándola en el sentido de que se deses-*

*tima la acusación sin perjuicio de que
pueda presentarse una nueva, ya por cons-
piración para cometer el delito que pres-
cribe el artículo 413 del Código Penal, o
directamente por el delito de falsificación
determinado en dicho artículo.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciados Aldrey y Hutchison.

El Juez Asociado Sr. del Toro no intervino en la resolu-
ción de este caso.